May it please the Court, I'm Robert Jobe and I'm appearing today on behalf of the petitioner Manbinder Singh Minhas, who I'm going to refer to as Mr. Singh. It's our view that the immigration judge's decision in this case is so rife with errors and ignores so much critical evidence that it has to be vacated, and that this case has to be remanded for entry of a new decision. Although the immigration judge considered Mr. Singh's demeanor, quote, generally appropriate, that's at page 82 of the record, he faulted Mr. Singh for inconsistencies and implausibilities that simply don't exist, and an alleged lack of detail in describing events that occurred outside of his presence or when he was just a child. First, the inconsistencies. On page 85 of the administrative record, the IJ somehow discerns an inconsistency between Mr. Singh's original application for asylum, which says that on February 27th, two members of the Punjab police had visited his uncle's home, and his supplemental statement that says on February 27th, the police visited his uncle's home. The Punjab police, the police. How that could be considered an inconsistency is just, it's beyond me. On page 76 and 77 of the administrative record, the IJ discerns an inconsistency between, on the one hand, Mr. Singh's original statement, which says that the police came to his home in December 1996, and when they couldn't find him, they, quote, arrested, unquote, his father. And his supplemental statement, which says that in December 1996, the police came to my house and took my father to the police station. Now, because... And would not give him up until I was given up. Right. Enhancement, right? Yes. There are two parts to the judge's analysis on that, on this point, Your Honor, and that's the second part. The first part is because the first statement says that he was arrested, and the second statement says they took my father to the police station, the immigration judge found that to be inconsistent. On this other point you're talking about here, the original statement, the assessment to refer, and Mr. Singh's testimony all say that the police threatened to hold his father until Mr. Singh presented himself. But the IJ found him inconsistent because his supplemental statement didn't also include that additional detail. And we would certainly submit it's an omission of a detail. There's nothing inconsistent between those three or four statements. They're otherwise perfectly consistent. Well, the IJ found that to be an enhancement of his bad status in the eyes of the police. He was showing that the police were really after him, not so much his father. And that was not stated in the supplemental declaration. What we usually find is that the application leaves out some facts which later appear in the supplemental declaration. And there are a bunch of cases saying the application has to be looked at in a different way because there's a rush to get it in. And sometimes he doesn't have counsel. But here it's a different way around. He's now embellishing in the supplementary declaration. That's what the IJ found. No. No, actually, he left it out of his supplemental statement. He wasn't embellishing at all. He left it out of just the one statement. Right. If anything, he's embellishing his application, but he doesn't back it up in his testimony. But he did back it up with his testimony. His testimony includes that same detail. His testimony, the assessment to refer, which recounts what he said in his original asylum interview, as well as his initial application all say the same thing. That statement is only left out of one document. It's left out of his supplemental declaration, which isn't intended. It's a supplement. It isn't intended to recount the whole history of the case. What do we do with the fact that the declaration was unsworn, unsigned? Yeah. The IJ goes out of his way to essentially to say, well, I have this document here, but I'm not going to give it much weight because it doesn't meet the formalities of proof that I'd like to. Well, I don't understand why the immigration judge didn't swear him to the statement. I mean, typically when we have a hearing like this. But his counsel offered to have his client swear. Well, he should have. I agree. His counsel should have offered to have him swear. Let me ask you a more current question, and that is, I recognize that the Real ID Act doesn't apply to this case, but wouldn't the provisions of the Real ID Act directly address this kind of a case where the Ninth Circuit case law has seized upon the arguments that you're properly making about, you know, it doesn't go to material, to the heart, and so on and so forth? And if we were – if the ID Act did apply, all of these would be appropriate considerations within that. Yes, they would be. Okay. Yeah. I think they would be. All right. Yeah. On page 86 of the record, the immigration judge says that although the assessment to refer states that Mr. Singh's father was arrested several times after December 1996, he says, quote, the immigration judge says, quote, there is no mention of these additional arrests in the respondent's statements, unquote. The judge is just wrong. While describing the events of 1997, Mr. Singh's written application says, quote, my father had been arrested various times because of me. He specifically mentions these arrests that the immigration judge says he didn't mention. Finally, the immigration judge finds this whopper. He says that Mr. Singh's original statement indicates that after the police visit in December 1996, Mr. Singh went to Bombay. Then it says in the original statement, I could not complete my twelfth grade in Lyle Porkhulsa College. My uncle let me stay in his home and I tried to seek admission, but being a Sikh, I was not given admission to any college. Because that statement wasn't precisely correct, Mr. Singh corrected it when he filed his supplemental statement. And that was filed before he began any testimony at all before the immigration judge. Essentially what the immigration judge is saying here is he's punishing him for correcting the statement before he's put under oath and before he provides testimony in support of his application. Now, in faulting Mr. Singh for failing to provide sufficient detail, the immigration judge, in my view, he made two critical errors. I mean, first, he faulted Mr. Singh for failing to provide details about certain truly incidental matters without even asking him to provide those details. For example, on page 86, the immigration judge notes that Mr. Singh mentioned attending various rallies, but he didn't specify a single one. Well, Mr. Singh didn't. But then again, he was never asked to, and his problems don't have anything to do with any of the rallies that he attended. Now, on this point, I think the Second Circuit view is exactly right. The Second Circuit said, in a similar case, since the list of circumstantial details can be expanded indefinitely, a legal standard that empowers an immigration judge or the BIA to rule against a petitioner who fails to anticipate the particular set of details that the fact finder desires but does not request through questions directed to the applicant is no standard at all. It would enable the administrative decision maker to reject whichever applicants the fact finder happens to disfavor. And that's precisely what happened in this case. The IJ's other mistake in faulting Mr. Singh for failing to provide details was that he faulted him for failing to provide details about events that occurred outside of his presence or when he was just a young child. For example, the immigration judge repeatedly faults Mr. Singh for failing to provide the questions that the police asked of his father during the various occasions that they detained his father. This is in the immigration judge's decision on page 72, page 73, page 82, page 83, and page 92. But Mr. Singh wasn't at the police station when his father was detained. He wasn't there to see what questions were being asked of his father. And it's important to recognize that the detentions that are at issue here began in 1985, when Mr. Singh was six years old. He's asking for details about detentions that occurred when he was six, seven, eight, nine, ten years old, and he wasn't even there. Anything that Mr. Singh would have to say on this point is obviously speculative, and the immigration judge himself recognized that when he cut off testimony on this point, and this is on page 174 of the record. I don't understand how the immigration judge, on the one hand, can cut off testimony as speculative on this point, and on the other, fault Mr. Singh for failing to provide the details about what transpired during these various detentions. Similarly, the immigration judge repeatedly faults Mr. Singh for failing to provide them. Again, here the immigration judge is essentially asking Mr. Singh to get inside the heads of the police officers who are looking for him and tell the judge what those men are thinking. He has no way to do that. All he can tell the judge is what he himself experienced. On the issue of changed country conditions. Does that go to testing his claim that they had traveled a great distance from the Punjab to Bombay simply because he had calloused on posters and the skepticism that the I.J. expressed that they would engage in a nationwide manhunt for somebody if that was the only thing they were looking for? I think it does go to that question, Your Honor. Why is that improper? Because my point is there's only so much that Mr. Singh himself is going to know. I mean, I think we can make out a case, for example, we know, I know, from reading the Human Rights Watch report, that the police regard individuals, pro-calloused on individuals who flee their homes, they regard them to be militants. We know that because I read the Human Rights Watch report. He doesn't know how the police think. That's not his thing. He's a computer guy, I think. But he's not going to know that kind of thing. But I guess my question, and maybe I'm really questioning sort of some of our existing Ninth Circuit case law, why is it improper for the fact finder to listen to the story and then to conclude that the story is not plausible or implausible? Right. I think the judge has to make a plausibility determination. I don't disagree with you at all on that. It's a question of how you make it. And for me, I think the only way that you can really make a determination about plausibility is if you consider it in the context of country conditions. And in this particular case, it seems to me that the judge was really ignoring a lot of what we know about country conditions. For example, the immigration judge kept saying, well, it was just posters. Why would the police be searching for you? Because they just found posters in your room. Well, the posters are from the All-India Sikh Student Federation, which is one of the leading advocates for calloused on. Mr. Singh, when he was taken in the first time, he's beaten, so he flees. We know from the Human Rights Watch report that when somebody who's in that situation flees, the police tend to suspect that person has gone off and joined the militants, particularly if he's a young man who's got these pro-calloused on sentiments. But the immigration judge wasn't taking any of that into account when he's discussing plausibility. He's discussing it as sort of a western-situated male who grew up here in the United States without putting it in any context. Without the context, you really can't judge the plausibility. Counsel, do you want to save some time? I see you're a couple minutes over. All right. Let's hear, then, from Ms. Redfern. Good morning. May it please the Court. Jan Redfern for the Attorney General. Your Honors, there's no sufficient credible evidence in this record to compel reversal of the immigration judge's decision that the petitioner was arrested and mistreated in Punjab on account of a political opinion, membership in a protected social group or religion.   even though he was a low-level functionary of the AISSF, and he sought to have the immigration judge draw an inference that he was mistreated because of his participation in this group. The immigration judge in this case, as you know, did not. But didn't the I.J. say that if he thought that Mr. Singh was credible, that he would have stated a sufficient case for the grant of asylum? Well, he said that after a couple of things. After, as you know, finding him not to be credible. And then finding on page 98 in his decision it's possible that he was arrested at some point in time and he was subject to custodial abuse, but the Court doesn't have any competent or credible evidence before which fully explains why he was arrested if he was. In other words, he hasn't shown us, even if credible, that he was persecuted or mistreated on account of a statutorily protected ground, that he was a member of the I.S.S.F., and he was mistreated because of that. Well, that's what he said, wasn't it? He had the posters. He was a member of A.I.S.S.F., and that's why he was arrested. If he's credible, then that's what Judge Bivey says. That's enough of a case, isn't it? Well, even if he's credible, though, he failed to make the logical leap from, okay, I'm credible and this happened to me. Even assuming it's true, this happened to him, he failed to make the logical inference that this happened to me because of my membership. Well, I'm looking at pages 98 and 99 of the record. That would be pages 30 and 31 of the I.J.'s decision. And the I.J.'s, I read it, says that if the respondent, even assuming the respondent was arrested for carrying posters and was, in fact, beaten, the court would assume that the respondent had established past persecution within the meaning of the act. Then goes on to say the government has rebutted this because of changed country conditions. Now, that's a very different defense from saying, no, you haven't, even if you're true, you haven't brought enough evidence to warrant asylum. That's correct. He did make an alternative finding that even if, even assuming he's credible, that he failed, that the government established that country conditions have changed and India is sufficient to rebut the law. So is the government contesting, does the government take issue with the I.J.'s conclusion that if Mr. Singh is credible that he has stated a sufficient case for past persecution and is entitled to a presumption of future persecution? No, Your Honor, the government doesn't take, is not adverse to that position or doesn't Your preferred position, then, is to go ahead and defend what the I.J. said here, which is that one, he's not credible, and two, there are changed country conditions. That's correct, yes. I have one other question before you proceed with your argument. I know I interrupted you fairly early on. I'm looking at page 2 of the I.J.'s decision, which is page 70 of the record. And at the top of that page, the I.J. says that the respondent has not shown that he is clearly and beyond doubt entitled to be admitted and is not an admissible, or that the respondent has not shown by clear and convincing evidence that he is lawfully present in the United States pursuant to prior admissions. Now, the use of the phrase is clearly and beyond doubt and clear and convincing evidence. It's not statutory language, is it? I don't believe it is, no. Hasn't the I.J. used the wrong burden of proof here, then? I believe that he has at that point, but it doesn't undermine his credibility determination and doesn't undermine his alternative findings. How would we know that if he said that he hasn't shown by clear and convincing evidence that he is lawfully present? How would we know, then, that the I.J. hasn't put that overlay on top of everything else that he's looking at? Well, clearly, Your Honor, that's something that the Petitioner hasn't raised, so he was not concerned about it. So it's not an issue that's before this Court. And by not raising that the immigration judge used the wrong standard of proof, the Petitioner has waived that argument, and it's not properly before the Court. But, again, I would suggest that the immigration judge's alternative finding is supported by substantial evidence, and there's no evidence to compel a reversal of that decision. May I ask you another question on another subject? We held in Chen v. Ashcroft that the I.J., quote, must provide the Petitioner with a reasonable opportunity to offer an explanation of any perceived inconsistencies that form the basis of a denial of asylum. I'm taking a look at excerpts of Record 163. Mr. Dillard, the government attorney, simply asked Mr. Singh or Mr. Minhas, or whichever name you choose, to confirm that he'd read Exhibit 5, which was, I guess, his application. And was it true? Yes, Your Honor. And went on from there. He never gave him an opportunity to explain any of these perceived inconsistencies that were later found. Doesn't that require us to remand for further review? It doesn't, Your Honor, simply because of the fact that there's an alternative finding here. About change of country? Yes, Your Honor. If we don't agree with that, it would, right? Right. If you don't agree with the entire case, including the alternative finding of well-founded fear. Getting back briefly to the credibility issue, though, I noticed that Petitioner's counsel didn't include at all in his argument the country reports and the fact that the immigration judge found the petitioner was not credible when viewed against the backdrop of the country reports that undermine his entire claim that as a low-level functionary of the AISSF, the Punjabi police would have such an extreme interest in him to make a trek across two states in order to pursue him for basically having posters in his room. Now, that's a difficult inference. It doesn't make any sense to me why police would be interested in somebody who only had posters. And the country report may say Punjabi police don't have interest in people who have posters. But, of course, that's a stereotype. It's a generalization that in a particular case may be incorrect. That is, if the Punjabi police may be in error in thinking that there was something more than posters there. But that would require us to know what the Punjabi police were thinking. It doesn't mean that he hasn't stated the credible case. Well, Your Honor, when viewed against the country reports, which indicate that, unfortunately, the Punjabi police were indiscriminate in their persecution of people or their mistreatment of people, it demonstrates that the petitioner's claim that he was mistreated on account of his membership is undermined, basically because the police unfortunately mistreated many people, many Indians in the state, whether they were Sikh, whether they were in an ISSF organization, whether they had any anti-government political views. And so when viewed against the backdrop of the State Department reports, it's clear that the petitioner didn't present compelling evidence that he was persecuted on account of his member. And then going to the well-founded fear, even assuming that the petitioner, as I stated earlier, established past persecution, substantial evidence of changed country conditions rebutted the presumption of a well-founded fear. In other words, his fear of returning to the country is not objectively reasonable. There's numerous country reports in this case, in Exhibits 12, 14, and 15 specifically, that indicate clearly that membership in the AISSF in itself does not constitute a reasonable basis for fearing persecution upon someone's return to India. And as a matter of fact, the petitioner cites in his brief Dr. Cynthia Mahmood for the proposition that he would fear, have a reasonable fear of returning to India, and she states at page 276, the same person, that low-level involvement in a political or military group, specifically the AISSF, is not, that person is not at risk. And that harassment of the rank-and-file AISSF members is not recently known, that Sikh activists are being picked up, they're not being picked up, and they're no longer of interest. So it's clear that the petitioner has failed to demonstrate compelling evidence to reverse the immigration judge's decision, and the respondent would respectfully request that the court deny the petition for review. Thank you. Thank you very much. Mr. Job, I'll give you a minute or so in rebuttal. Thank you, Your Honor. I appreciate that. On the issue of changed country conditions, I basically just want to make one point, and that is, if you examine the immigration judge's analysis with regard to that question, the crucial fact, the one crucial fact with regard to whether the conditions have sufficiently changed is missing. He doesn't even grapple with it. That crucial fact is that the police are still looking for Mr. Singh. He testified, and if you accept his testimony as credible, we have to accept this fact as true. In other words, the changed country conditions were not individualized. Precisely. Yes, Your Honor. He testified at his hearing that just three months earlier, the police had visited his family's home searching for him once again. So, I mean, we can talk about these abstract changes in country conditions, but there's no way that those abstract conditions can overcome his credible testimony because the police, three months prior to this man's hearing, were still looking for him. You combine that with the fact that the State Department says that torture is common, and I think the presumptions are irrebuttable. Thank you. Thank you, counsel. The case just argued is submitted. That concludes all of the cases for the week, and we are adjourned. All rise. This court, for this session, now stands adjourned. I didn't know that you were going to introduce myself. How about it? Nice meeting you. Do you have a couple of questions for me? I'm going to let you know. I did a very good job. Good. It was a difficult case, I appreciate it. Yeah. Thank you. Thank you. Thank you. Anything like that? No. Again, we're going to get charges. If we have an attack to count, there's no charge. I'm interested in something else, and then we'll move on to the next. How much did you have, or what did you spend? These three records right here. Okay. These two records. I sent them. I usually send them to myself. I have a hearing instrument, and I don't like it. Would you mind? I have the bills. I'm getting all ready to go. They're out in Austin. Those are great. They're in Austin. That's fine. That's great. Excellent. Thanks so much. Awesome. Okay, so I have another thing the next day. Well, they do first overnight, but it doesn't matter at all. I might not get it again, so. Okay. I think it should go to probably tomorrow. I don't know. Right here. Yeah, and you know, I'm not sure if that and I haven't returned it. I'm wondering if that doesn't work. I've got this. Then you can check whatever you want to. Right. For a day or something like that? Right. Second day is what we normally do that. Can I fill this out, too, just in case? That's fine. Yeah. Do you have anybody in the office with you? I can't use my office just yet. Okay. Great. Okay. Do you ever have an afternoon or a long meeting? Not very often. Usually, that happens all the time. Okay. I usually just leave this slide blank and it's never a problem, but I'm just going to check third business day. That's fine. Yeah, and then I never even check these boxes. Thank you so much. What's your name again? Ruben. Ruben, it's so nice of you to do that. Thank you. No problem. All right. Have a good time. Thank you. You're really going to haul this around? I know. We're Californians. Thank you. You're welcome.
judges: Tallman, Bybee, Bea